NOT DESIGNATED FOR PUBLICATION

No. 116,743

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOSE VEGA-GAMBOA,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WILLIAM P. MAHONEY, judge. Opinion filed September 15, 2017. Affirmed.

*R. Bruce Kips*, of Shawnee, for appellant.

*Joanna Labastida*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before ARNOLD-BURGER, C.J., GARDNER, J., and STUTZMAN, S.J.

PER CURIAM: When the Kansas Department of Revenue affirmed the suspension of his driving privileges following an administrative hearing, Jose Vega-Gamboa filed a petition for judicial review with the Wyandotte County District Court. The district court affirmed the administrative decision. From that order, Vega-Gamboa timely appeals. We find no error by the district court and affirm its denial of Vega-Gamboa's petition.

1

FACTS AND PROCEDURAL BACKGROUND

A few minutes before midnight on September 27, 2014, Sergeant Alex Bruce of the Kansas City Police Department was on patrol and was slowing as he approached a stoplight when he observed a truck traveling at a high rate of speed on the cross street. Bruce made a right turn and increased his speed to catch up, trying to pace the truck. Based on his pacing of the vehicle he estimated that the truck was traveling about 50 miles per hour, well above the 30 miles per hour speed limit, so he activated his lights and pulled behind the truck as it made a right-hand turn into a gas station.

Bruce stopped behind the truck, got out of his patrol vehicle, and walked up to the truck where he made contact with Vega-Gamboa. He noticed a strong order of alcohol coming from the truck and saw that Vega-Gamboa had watery and bloodshot eyes. Vega-Gamboa told Bruce that he had consumed a few beers that night and was just coming from a bar or club. Bruce asked Vega-Gamboa to step out of the truck and walk to the back of the vehicle, and he noticed that he was sluggish as he got out. He asked Vega-Gamboa to submit to the horizontal gaze nystagmus (HGN) test and noticed that Vega-Gamboa's speech was "thick" but still understandable. Bruce did not ask Vega-Gamboa to submit to any standardized field sobriety tests. Following the HGN test, he arrested Vega-Gamboa for driving under the influence (DUI) and asked that Officer Kenneth Garrett come to the scene to administer a preliminary breath test (PBT).

Bruce placed Vega-Gamboa in the back of his patrol car and went to the truck to retrieve Vega-Gamboa's driver's license. In the truck he noticed a case of Bud Light beer that was open in the cab and an open container of Bud Light in the center console.

As requested, Garrett arrived on the scene to assist by giving Vega-Gamboa a PBT. At the district court hearing, Garrett testified that his department used a PBT machine produced by CMI, Inc., model number CDL-5. He also testified that it was an

2

older model than other CMI devices they use, but it was approved by the Kansas Department of Health and Environment. According to Garrett, CMI recommends an observation period of 15 minutes for its PBT devices to ensure that the driver has not consumed alcohol right before the test and to verify that the driver has not vomited or belched, which could bring alcohol into the mouth. He testified that the PBT is an investigatory tool used by officers to determine whether someone is under the influence of alcohol rather than some other substance, and the results are not used as the basis for the arrest. Based on the time that Bruce made contact with Vega-Gamboa and the time Garrett administered the PBT, Garrett believed that 15 minutes had passed. It actually was about 13 minutes. Vega-Gamboa failed the PBT.

The district court held that Bruce had reasonable grounds to request an evidentiary breath test based on the totality of the circumstances. Factors the district court noted as support for its ruling included: (1) the patrol car dash camera video showed Vega-Gamboa had to steady himself against the truck when exiting the vehicle; (2) Vega-Gamboa's speed as he passed through the intersection and was followed by Bruce; (3) the odor of alcohol that was detected; (4) the open container in the truck and the open case of beer; and (5) the failure to follow directions for the HGN test. After considering the arguments about the observation time and certification of the PBT device, the district court also found that the PBT results were admissible. The district court denied the petition to reverse the administrative decision suspending his driving privileges, and Vega-Gamboa timely appeals that order.

ANALYSIS

Vega-Gamboa presents two issues: (1) whether the district court erred in finding that Bruce had reasonable grounds to believe Vega-Gamboa was operating a vehicle while under the influence of alcohol; and (2) whether the district court erred by finding the PBT result was admissible. For the reasons discussed below, we find no error by the

3

district court on the first issue but agree that admission of the PBT was error. Even without considering the PBT result, however, we find the district court's reasonable grounds decision was sufficiently supported by the evidence.

*The arresting officer had reasonable grounds to believe Vega-Gamboa was operating a vehicle while under the influence of alcohol.*

We review a district court's decision on a license suspension for substantial competent evidence. *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764, 772, 148 P.3d 538 (2006). Substantial evidence is "such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." *Drach v. Bruce*, 281 Kan. 1058, Syl. ¶ 2, 136 P.3d 390 (2006), *cert. denied* 549 U.S. 1278 (2007). Whether substantial competent evidence exists is a question of law. *Redd v. Kansas Truck Center*, 291 Kan. 176, 182, 239 P.3d 66 (2010).

Before Bruce asked Vega-Gamboa to provide an evidentiary test for the presence of alcohol, he needed reasonable grounds to believe Vega-Gamboa was operating his vehicle while under the influence of alcohol:

> "A law enforcement officer shall request a person to submit to a test or tests deemed consented to under subsection (a): (1) If, at the time of the request, the officer has reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both, . . . and one of the following conditions exists: (A) The person has been arrested or otherwise taken into custody for any violation of any state statute, county resolution or city ordinance." K.S.A. 2015 Supp. 8-1001(b).

> "'Reasonable grounds' under [K.S.A. 2015 Supp. 8-1001(b)] is analogous to 'probable cause.' See *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, Syl. ¶¶ 3-4, 290 P.3d 555 (2012). 'Probable cause to arrest is the reasonable belief, drawn from the totality of information and reasonable inferences available to the arresting officer, that the defendant has committed or is committing a specific crime.' *State v. Johnson*, 297 Kan. 210, 222,

4

301 P.3d 287 (2013)." *Readdy v. Kansas Dept. of Revenue*, No. 114,598, 2017 WL 3822720, at *5 (Kan. App. 2017) (unpublished opinion).

We look to Vega-Gamboa's behavior before, during, and after he was behind the wheel to determine if there was sufficient evidence to support Bruce's conclusion that he had reasonable grounds to believe Vega-Gamboa was under the influence of alcohol at the time the test was requested. See *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 631, 176 P.3d 938 (2008).

Here, several factors before, during, and after the stop contributed to Bruce having those reasonable grounds. First, Bruce's initial contact with Vega-Gamboa, around midnight, followed his observation that Vega-Gamboa was speeding. This court has found that minor traffic violations, combined with the time of day, can constitute factors supporting reasonable grounds to believe a driver is operating a vehicle under the influence of alcohol. *Horton v. Kansas Dept. of Revenue*, No. 101,047, 2009 WL 3270833, at *2 (Kan. App. 2009) (unpublished opinion); see also *Hanchett v. Kansas Dept. of Revenue*, No. 115,579, 2016 WL 6822802, at *3 (Kan. App. 2016) (unpublished opinion) ("[C]ourts have consistently held that driving infractions, together with other indicators, support a finding of reasonable grounds to arrest and conduct breath testing.").

Second, during the stop Vega-Gamboa admitted to drinking a "few beers." Since the Legislature has criminalized the status of driving while having a blood-alcohol level of .08 or more, the admission of drinking "is sufficient to give rise to reasonable grounds to believe [a driver] was driving while intoxicated." 2016 WL 6822802, at *4 (citing *Cline v. Kansas Dept. of Revenue*, No. 103,123, 2011 WL 148897, at *2 [Kan. App. 2011] [unpublished opinion]).

Third, Bruce observed a strong odor of alcohol coming from the vehicle, also a factor that can support a finding that reasonable grounds exist to believe an individual

5

was driving under the influence. *Poteet v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, 416, 233 P.3d 286 (2010).

Fourth, Bruce saw that Vega-Gamboa had bloodshot and watery eyes. Observing a driver's bloodshot eyes is likewise an accepted factor for an officer to consider in making a reasonable grounds finding. *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 518-19, 242 P.3d 1179 (2010) (finding reasonable grounds from bloodshot and watery eyes, along with other indicators).

Fifth, Vega-Gamboa had "thick" and at times unclear speech, although Bruce testified he was still able to comprehend what Vega-Gamboa was saying. Although "thick speech" has not been determined to be a sign of intoxication supporting reasonable grounds to believe that a driver is operating a vehicle under the influence, "slurred speech" has been found to support a reasonable belief. See *Crisp v. Kansas Dept. of Revenue*, No. 108,904, 2013 WL 5870079, at *3 (Kan. App. 2013) (unpublished opinion). Although at trial Vega-Gamboa argued his speech is naturally thick, under the totality of the circumstances, an "officer does not have to negate every potential innocent explanation before the officer can have reasonable grounds to believe the person has committed a crime." *Landram v. Kansas Dept. of Revenue*, No. 104,790, 2012 WL 924803, at *3 (Kan. App. 2012) (unpublished opinion); see *McClure v. Kansas Dept. of Revenue*, No. 109,025, 2013 WL 5870119, at *4 (Kan. App. 2013) (unpublished opinion) ("[I]t is not necessary that the driver exhibit every sign of possible intoxication. It is sufficient that the police officer observe enough signs of intoxication to make a reasonable police officer believe the driver was operating a vehicle while under the influence of alcohol.").

Sixth, after Bruce arrested Vega-Gamboa, he found an opened case of beer in the vehicle and an open container of beer in the center console. An open container of alcohol, along with other factors, can support a reasonable belief that the driver was operating the

vehicle under the influence of alcohol. *Neiman v. Kansas Dept. of Revenue*, No. 112,112, 2015 WL 4578408, at \*2 (Kan. App. 2015) (unpublished opinion).

Although Garrett had Vega-Gamboa submit to a PBT, the admissibility of that result is Vega-Gamboa's second issue for our consideration and we exclude it from this part of our analysis. Considering the other factors together, however, in light of all the circumstances and the reasonable inferences that could be drawn from them, we find Bruce had reasonable grounds to believe Vega-Gamboa was operating a vehicle under the influence of alcohol.

*The district court erred in admitting the results of the PBT.*

Vega-Gamboa next argues that the PBT results were inadmissible for three reasons: (1) the PBT device used was not an approved device under K.A.R. 28-32-14; (2) the officer did not have reasonable suspicion to believe that Vega-Gamboa was operating his vehicle under the influence; and (3) the test was improperly given because the administering officer did not wait for the entire observation period before administering the test.

The regulation governing devices that may be used for PBTs in Kansas requires:

> "Each preliminary breath-screening test conducted shall be performed on a preliminary breath-screening test device approved by the secretary. The devices approved for use as preliminary breath-screening test devices in Kansas shall consist of the following devices and any other device approved by the secretary as specified in subsection (b)." K.A.R. 28-32-14(a).

Garrett testified he had Vega-Gamboa perform his PBT on a CDL-5 device manufactured by CMI. Vega-Gamboa points out that the CDL-5 was not among the approved devices listed in K.A.R. 28-32-14(a), and the district court had no testimony before it to show the

7

nonlisted device had been approved through the procedure described in K.A.R. 28-32-14(b). Accordingly, Vega-Gamboa argues the test results were inadmissible for that reason alone.

In rejecting that argument, the district court said:

"While it's on point, I don't find that Mr. Vega-Gamboa has proven that the device that was used was not authorized 'cause we have testimony of the officer, and we have this list but at this point, based on the experience of the officers involved in this case, the Court isn't persuaded that they would have been using a nonapproved device."

Notwithstanding the district court's favorable assessment of Bruce and Garrett, the device used was neither preapproved by being on the list in the regulation nor approved by separate submission to the Department of Health and Environment. The district court erred, therefore, in admitting the result of the PBT.

In light of our finding based on the use of an unapproved device, we only briefly note the other parts of Vega-Gamboa's attack on the admission of the PBT result. His second assertion, that Garrett lacked the requisite reasonable suspicion to request the test, fails for the reasons discussed above in our consideration of his first issue concerning the more stringent reasonable grounds test.

The third part of Vega-Gamboa's inadmissibility argument, however, does have merit. K.A.R. 28-32-14 again governs, directing in subsection (c) that "[e]ach approved preliminary breath-screening test device shall be operated according to the procedures specified in the manufacturer's instruction manual for the device in use." The district court heard testimony from Garrett that the manufacturer of the device he used recommended a 15-minute period of observation before administering a test, and that the observation period was not only intended to exclude further consumption of alcohol—

8

admittedly unlikely in Bruce's patrol car—but also to be aware of any large belch or vomiting that would bring alcohol to the mouth. The district court found a 13-minute period, rather than 15 minutes, and rejected Vega-Gamboa's argument on the basis that there was no evidence of any opportunity to eat or drink anything during that time or at the time he was stopped. Although there may have been 13 minutes of *deprivation*, the district court's summary of the evidence of Bruce's and Garrett's movements clearly precluded their continuous *observation* of Vega-Gamboa, individually or combined, even during that reduced 13-minute period.

For the first and third reasons Vega-Gamboa asserts, the district court should have denied admission of the PBT result.

*Conclusion*

Although we find error by the district court in admitting and considering the PBT result, that result was not needed to support the district court's finding that there were reasonable grounds to believe Vega-Gamboa was operating his vehicle under the influence of alcohol. We find, therefore, that the district court's decision to deny Vega-Gamboa's petition, leaving the administrative suspension in place, was supported by substantial competent evidence.

Affirmed.

9