NOT DESIGNATED FOR PUBLICATION

No. 115,579

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TIFFANY HANCHETT,
*Appellee*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellant*.


MEMORANDUM OPINION

Appeal from Saline District Court; JEROME P. HELLMER, judge. Opinion filed November 18, 2016. Reversed and remanded with directions.

*Donald J. Cooper*, of Legal Services Bureau, Kansas Department of Revenue, for appellant.

No appearance by appellee.


Before BRUNS, P.J., GREEN, J., and WILLIAM S. WOOLLEY, District Judge, assigned.


*Per Curiam*:  The Kansas Department of Revenue (KDR) appeals from a judgment of the trial court reversing the suspension of Tiffany Hanchett's driver's license. Following an administrative hearing affirming the suspension of Hanchett's license, she appealed her suspension to the trial court. The trial court ruled that no reasonable grounds existed to support the arresting officer's belief that Hanchett was operating her vehicle while under the influence of alcohol. KDR contests the trial court's decision and argues that substantial evidence supports the arresting officer's determination that reasonable grounds existed. In addition, KDR contends that Hanchett refused a breath test, which

1

resulted in the suspension of her license. Finding merit in KDR's first argument, we reverse and remand for further proceedings.

On July 2, 2014, at around 2 a.m., Salina Police Officer Charleton Huen was on patrol when he saw Tiffany Hanchett traveling 29 miles per hour in a 20 mile per hour zone. Huen also noticed that Hanchett was having difficulty staying in her lane of traffic. As a result of her driving infractions, Huen stopped Hanchett's car at 2:12 a.m. Huen noticed several indicators that showed Hanchett was under the influence of alcohol. Huen placed her under arrest. Hanchett was taken to the Saline County Jail, where she allegedly refused to submit to a breath test. As a result of this alleged refusal, Hanchett's driver's license was suspended.

Hanchett requested an administrative hearing, which was held on November 7, 2014. The hearing officer affirmed Hanchett's license suspension. Hanchett then sought a trial in the Saline County District Court, claiming that Huen did not have reasonable grounds to believe she was operating her vehicle while under the influence of alcohol. Moreover, she maintained that she never refused Huen's request to take a breath test. A trial was held on February 2, 2016.

Huen testified that he pulled Hanchett over because she was speeding and failing to maintain a single lane of travel. He explained that although she had no difficulties producing her driver's license or insurance information, she had "[b]loodshot, watery eyes, slurred speech, [and an] odor of alcohol that became stronger as she spoke." These signs, he explained, were indicators of intoxication, especially when observed that early in the morning.

Though Hanchett first told Huen that she had not been drinking, she eventually admitted that she had been at Big Nose Kate's, a drinking establishment, and she had consumed four alcoholic beverages. Huen then asked her to step out of her vehicle so he

2

could administer the standard field sobriety tests. When he asked Hanchett to perform the walk-and-turn test, she "failed to remain in the instructional position, she made a pivot on the turn and she stepped off the line on one of the steps." She also swayed during the one-leg-stand test. Huen placed Hanchett under arrest and asked her if she would take a preliminary breath test. Huen explained that he first asked her to take a preliminary breath test before her arrest, and she refused. He decided to ask her again and told her he would "un-arrest" her if she passed, which she did not.

Huen transported Hanchett to the Saline County jail. He provided her with both a written and an oral notice of the implied consent advisory and asked her to take a breath test. Hanchett allegedly refused to submit to the test. Huen then marked on the DC-27 form that she refused the test, and he made a note of the same in his narrative report. Huen also testified that he furnished Hanchett with a copy of the form.

Hanchett testified that she left Big Nose Kate's when it closed at 2 a.m. She explained that she was speeding because she was unaware that the speed limit was only 20 miles per hour. She also stated that her eyes were bloodshot because she had been wearing her contacts, which irritated her eyes. Hanchett explained that when asked if she had been drinking, she initially told Huen that she had not because she "had never been in that situation so [she] didn't know how to answer [him]." She did testify that she had consumed four drinks over 4 hours. Hanchett also stated that she was not asked to take a breath test, that she never refused to take a breath test, and that she never received the implied consent notices.

The trial judge took the matter under advisement. In a written journal entry, the trial judge concluded that Huen had no reasonable grounds to believe Hanchett was operating her vehicle while under the influence of alcohol. Therefore, Huen should not have continued the DUI investigation after stopping her for her traffic infractions. The

trial court reversed the order suspending Hanchett's driver's license. KDR appealed the trial court's judgment. Hanchett did not file a brief in this appeal.

*Did the Arresting Officer Have Reasonable Grounds to Believe That Hanchett Was Operating Her Vehicle While Under the Influence of Alcohol?*

KDR asks this court to reverse the trial court's judgment because there was substantial evidence in the record that Huen did have reasonable grounds to believe that Hanchett was operating her vehicle while under the influence of alcohol. KDR emphasizes that Huen stopped Hanchett for speeding and for not staying in her lane of traffic. Moreover, Huen detected an odor of alcohol coming from the vehicle that became stronger as Hanchett spoke. Hanchett also first denied but then admitted that she had come from a drinking establishment and had been drinking. Furthermore, though Hanchett passed some parts of the field sobriety tests, she did show some markers of intoxication. All of this, KDR asserts, was substantial evidence that Huen had reasonable grounds upon which to believe that Hanchett was operating her vehicle while intoxicated.

When a driver challenges the administrative suspension of her driving privileges for the failure to submit to a breath test, the trial court conducts a de novo trial. K.S.A. 2015 Supp. 8-1020(p). At trial, the driver bears the burden of proving the agency action should be set aside. K.S.A. 2015 Supp. 8-1020(q). If the trial court's ruling is appealed, this court reviews its factual findings to determine if they are supported by substantial competent evidence. *Schoen v. Kansas Dept. of Revenue*, 31 Kan. App. 2d 820, 822, 74 P.3d 588 (2003). Substantial competent evidence is testimony, documents, or any other information that a "reasonable person would accept as furnishing an adequate basis for a particular conclusion." *Cline v. Kansas Dept. of Revenue*, No. 103,123, 2011 WL 148897, at *1 (Kan. App.) (unpublished opinion), *rev. denied* 291 Kan. 911 (2011) (citing *Hodges v. Johnson*, 288 Kan. 56, Syl. ¶ 7, 199 P.3d 1251 [2009]). Under this standard, an appellate court does not make credibility findings nor does it give weight to

4

evidence that conflicts with the trial court's factual findings. *Hodges*, 288 Kan. 56, Syl. ¶ 7. Whether substantial competent evidence exists, on the other hand, is a question of law, to be reviewed de novo. *Nunemaker v. Kansas Dept. of Revenue*, No. 105,528, 2011 WL 5143136, at *2 (Kan. App. 2011) (unpublished opinion) (quoting *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 514, 242 P.3d 1179 [2010]).

Here, the trial court, after reviewing the evidence and making factual findings, concluded that there were no reasonable grounds to believe that Hanchett was operating her vehicle while under the influence of alcohol. Accordingly, the issue before this court is one of law: whether the evidence presented establishes reasonable grounds to conclude that Hanchett was driving under the influence. *Landram v. Kansas Dept. of Revenue*, No. 104,790, 2012 WL 924803, at *5 (Kan. App.) (unpublished opinion), *rev. denied* 296 Kan. 1130 (2012); see also *Smith*, 291 Kan. at 515 ("Whether substantial competent evidence exists is a question of law. This court must determine whether there were reasonable grounds, *i.e.*, probable cause to support the officer's decision to request the evidentiary breath test."). This court has de novo review of whether reasonable grounds existed to believe Hanchett was driving while intoxicated. Once we have the facts in hand, either undisputed ones or those as found by the trial court, we must independently review the ultimate legal question here, whether the officer had reasonable grounds to believe the driver had been driving under the influence of alcohol. *Sjoberg v. Kansas Dept. of Revenue*, No. 103,937, 2012 WL 3966511, at *9 (Kan. App. 2012) (unpublished opinion); see also *Poteet v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, 415, 233 P.3d 286 (2010) ("The independent review of the ultimate conclusion of whether reasonable suspicion, probable cause, or the like exists is 'necessary if appellate courts are to maintain control of, and to clarify, the legal principles' at stake.").

Under K.S.A. 2015 Supp. 8-1001, the refusal to submit to a breath test for alcohol results in the suspension of driving privileges. A law enforcement officer can ask a person to submit to a breath test if the officer has "reasonable grounds to believe the

person was operating or attempting to operate a vehicle under the influence of alcohol" and the person has been arrested for the offense. K.S.A. 2015 Supp. 8-1001(b). "The determination of reasonable grounds is similar to a determination of probable cause to make an arrest." *Poteet*, 43 Kan. App. 2d at 416. An officer has reasonable grounds to believe an individual is operating a vehicle under the influence of alcohol if, under all the circumstances, "a reasonably prudent police officer would believe the person's guilt is more than a mere possibility." *Nunemaker*, 2011 WL 5143136, at *2.

In determining whether Huen had reasonable grounds to believe that Hanchett was operating her vehicle while intoxicated, this court relies on the facts found by the trial court and any facts not in dispute. See *Sjoberg*, 2012 WL 3966511, at *7. The trial judge found and concluded as follows:

> "Officer Huen inquired of the plaintiff if she had been drinking and she replied in the affirmative. Officer Huen then had the plaintiff exit her vehicle and asked her to perform certain field sobriety tests. The video, discloses that [Hanchett] complied with the lawful requests of Officer Huen and that she cooperated in the taking of the field sobriety tests. The video discloses that [Hanchett] did not slur her speech and she exited the vehicle without assistance, was able to stand and walk without swaying or needing assistance to maintain her balance.
>
> The [c]ourt finds that the traffic stop alone and the physical observations of [Hanchett] did not provide reasonable grounds for Officer Huen to continue a DUI investigation and that the clear physical and oral responses of [Hanchett] as shown on the video support that while Officer Huen had reason to stop [Hanchett] for traffic violations, that in and of itself and in light of the performance and display of physical dexterity of [Hanchett] during the stop did not give rise to reasonable grounds for a continued DUI investigation."

The trial court's finding ignores the other uncontroverted facts that support Huen's determination that reasonable grounds existed to believe Hanchett was operating her vehicle while intoxicated. First, Huen observed Hanchett at 2:12 am. She was speeding.

6

Moreover, she failed to remain in her lane of traffic while driving. The lateness of the hour is a factor that can be considered in considering whether reasonable grounds existed: it supports an inference that the later the hour, the greater the chance of encountering an intoxicated driver. *Sjoberg*, 2012 WL 3966511, at *7; see *Kohn v. Kansas Dept. of Revenue*, No. 103,703, 2011 WL 768000, at *2 (Kan. App. 2011) (unpublished opinion); *Horton v. Kansas Dept. of Revenue*, No. 101,047, 2009 WL 3270833, at *2 (Kan. App. 2009) (unpublished opinion). Moreover, our courts have consistently held that driving infractions, together with other indicators, support a finding of reasonable grounds to arrest and conduct breath testing. See, *e.g.*, *Pollman v. Kansas Dept. of Revenue*, No. 105,974, 2012 WL 1237902, at *2 (Kan. App. 2012) (unpublished opinion); *Nunemaker*, 2011 WL 5143136, at *3 (appellee was driving 10 miles per hour over the speed limit, thus supporting arresting officer's finding of reasonable grounds that appellee was driving while intoxicated); *Stowers v. Kansas Dept. of Revenue*, No. 100,408, 2009 WL 2436682, at *3 (Kan. App. 2009) (unpublished opinion) (reasonable grounds where appellant was observed driving erratically at 2 a.m.); *Horton*, 2009 WL 3270833, at *2 (three observed traffic violations, although very minor, combined with lateness of the hour, provided reasonable grounds).

Furthermore, Hanchett told Huen that she had just left a drinking establishment, and she eventually admitted, after first denying it, that she had consumed four drinks. The admission of consuming alcohol by itself is sufficient to give rise to reasonable grounds to believe Hanchett was driving while intoxicated. See *Cline*, 2011 WL 148897, at *2 ("[Appellant] told [the arresting officer] that he had two mixed drinks earlier in the evening. That alone furnished a reasonable ground to request a chemical or blood test."). This court explained in *Cline*:

> "In K.S.A. 8-1567, Kansas has criminalized the status offense of driving with a blood-alcohol level of .08 or more. . . . Neither the person nor his or her driving need be impaired by the alcohol to violate the statute. [Appellant's] statement to [the arresting

7

officer] that he had recently consumed more than a negligible amount of alcohol provided probable cause or a reasonable ground to believe a violation had occurred and, in turn, to arrest and require a test." 2011 WL 148897, at *2.

Relatedly, Huen testified that Hanchett smelled of alcohol and the odor became stronger as she spoke. In *Campbell v. Kansas Dept. of Revenue*, this court found that reasonable grounds existed where the driver was speeding, smelled of alcohol, and admitted to having a few drinks. 25 Kan. App. 2d 430, 431-32, 962 P.2d 1150 (1998), *rev. denied* 266 Kan. 1107 (1998). This court stated that these facts were "more than sufficient to satisfy a reasonably prudent police officer that [the suspect] had been driving under the influence." 25 Kan. App. 2d at 432; see also *Nunemaker*, 2011 WL 5143136, at *3 (reasonable grounds where appellee smelled like alcohol and admitted he had consumed beer). Thus, the fact that Hanchett smelled of alcohol and admitted to having consumed four alcoholic beverages supports a finding of reasonable grounds that she was operating her vehicle while under the influence of alcohol.

Finally, the trial court's reliance on Hanchett's successful completion of the field sobriety tests is misplaced. The court seems to have based its conclusion that reasonable grounds were lacking on the fact that Hanchett passed the field sobriety tests, did not need assistance to stand, and displayed "physical dexterity." While these facts certainly weigh in Hanchett's favor, as discussed by this court in *Nunemaker*, the ability to perform field sobriety tests or function without seeming impaired does not control whether the arresting officer had reasonable grounds to believe Hanchett was operating her vehicle while intoxicated. See 2011 WL 5143136, at *2.

> "K.S.A. [ ] 8-1567(a)(1) makes it unlawful for a person to operate or attempt to operate a vehicle while their blood alcohol concentration (BAC), as shown by competent evidence, is .08 or more. . . . No matter how well [Hanchett] performed the [field sobriety tests], if [her] BAC was .08 or higher, [she] was in violation of the statute." See *Nunemaker*, 2011 WL 5143136, at *2.

8

Accord *Cline*, 2011 WL 148897, at *2.

Under these factual circumstances, Huen had good reason to believe that guilt was more than a possibility. Thus, he had reasonable grounds to believe that Hanchett had been operating her vehicle while under the influence of alcohol. See *Campbell*, 25 Kan. App. 2d at 431-32 (probable cause to arrest where appellant was speeding at 1:10 a.m., smelled of alcohol, and admitted to having consumed alcohol); *Gillam v. Kansas Dept. of Revenue*, No. 114,342, 2016 WL 449879, at *4 (Kan. App. 2016) (unpublished opinion) (reasonable grounds to believe appellee had been driving under the influence where she smelled of alcohol, admitted to drinking, showed some indicators of impairment on a field sobriety test, and it was 1:30 in the morning); *Horton*, 2009 WL 3270833, at *2 (minor traffic infractions, combined with the lateness of the hour, the odor of alcohol, and the admission of consuming alcohol sufficient to support reasonable grounds to request breath testing). As a result, we reverse.

*Did Hanchett Refuse a Breath Test?*

KDR refutes Hanchett's contention that she never actually refused a breath test. While acknowledging that the trial court made no factual findings related to this issue, KDR argues that there was substantial competent evidence in the record that Hanchett was given the implied consent notices and refused to submit to the test. Specifically, Huen testified that he asked Hanchett to take a breath test after reading her the implied consent notices. Moreover, the DC-27 Officer Certification form was marked as a refusal, and Huen's narrative notes state the same. Thus, the only conflicting evidence was Hanchett's testimony that she was never asked to take a breath test.

Whether Hanchett actually refused to submit to a breath test is significant because even if there were reasonable grounds to believe she was operating her vehicle under the influence, if she never refused the test, or if she was not properly served with the implied

9

consent paperwork, her suspension can be reversed. See *Gudenkauf v. Kansas Dept. of Revenue*, 35 Kan. App. 2d 682, 685, 133 P.3d 838 (2006). The issue of whether there was a refusal to submit to a breath test is a question of fact, not law, so "[t]he scope of appellate review is whether there is substantial competent evidence to support the findings of the [trial] court." *McRoberts v. Kansas Dept. of Revenue*, 17 Kan. App. 2d 680, 684, 843 P.3d 280 (1992). The trial court here made no factual findings on this issue, either on the record or the journal entry, but KDR did not object to the inadequate findings.

The trial court must provide adequate findings of fact or conclusions of law on the record explaining the court's decision on contested matters. *Fischer v. State*, 296 Kan. 808, 825, 295 P.3d 560 (2013). A party, however, must object to inadequate findings to preserve an issue for appeal and give the district court an opportunity to correct any alleged inadequacies. 296 Kan. at 825. If no objection is made, then this court can presume the trial court found all facts necessary to support its judgment. *State v. Dern*, 303 Kan. 384, 394, 362 P.3d 566 (2015). Where the record does not support such a presumption, and the lack of specific findings precludes meaningful appellate review, an appellate court can order a remand. *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012).

The lack of specific findings here precludes meaningful appellate review; the record is not sufficient to permit this court to presume that the trial judge found all necessary facts to support a conclusion about whether Hanchett refused to take a breath test. The trial judge made no rulings from the bench, and instead he took the matter under advisement. The journal entry indicates that the court never even reached the issue of whether there was a refusal to submit to a breath test. The court made factual findings regarding whether there were reasonable grounds to believe that Hanchett was operating her vehicle while intoxicated. It ultimately concluded that the field sobriety tests and the physical observations of Hanchett did not provide reasonable grounds to continue a DUI

investigation, so it reversed her license suspension. Thus, the trial court did not, nor did it have to, reach the issue of whether a breath test was refused.

This court discussed the lack of factual findings in a case involving a refusal to submit to a breath test in *Haworth v. Kansas Dept. of Revenue*, No. 89,325, 2003 WL 21981949, at *5 (Kan. App. 2003) (unpublished opinion). In that case, the appellant claimed that he was never given field sobriety tests, so the arresting officer did not have reasonable grounds to ask him to take a breath test. 2003 WL 21981949, at *5. There was conflicting evidence on whether field sobriety tests were undertaken, but the trial court did not make any findings of fact in the journal entry. 2003 WL 21981949, at *5. This court ultimately found that the record was sufficient to allow this court conduct a meaningful appellate review:

> "While there are no findings of fact in the journal entry, when ruling from the bench, the trial court stated, 'Field tests were the first ones offered. They were refused.' In this case, the testimony of [the appellant] and [the arresting officer] was conflicting on whether tests were offered. However, the trial court made a credibility determination and ruled that such tests were offered." 2003 WL 21981949, at *5.

Unlike *Haworth*, there is nothing in the record here that indicates that the trial court even considered the issue of whether Hanchett refused to submit to a breath test. Thus, the record is insufficient to allow this court to presume that the trial court made the necessary factual findings because there is nothing that indicates the court even reached this issue.

KDR contends that because the record shows that there was substantial competent evidence that Hanchett refused a breath test, this court should affirm the hearing officer's determination that Hanchett did refuse the test. This contention reveals a misunderstanding of the appropriate standard of review. As discussed earlier, whether there was a refusal is a question of fact. As a result, this court reviews the trial court's

11

findings to ensure that they are supported by substantial competent evidence. *McRoberts*, 17 Kan. App. 2d at 684. KDR acknowledges that the court made no factual findings on this issue; it instead points to the evidence in the record supporting its argument that Huen asked Hanchett to take a breath test and states that Hanchett's contrary evidence was "insufficient to meet her burden of proof."

KDR is asking this court to weigh competing evidence in the record and make a determination as to which is more credible. This is not the role of this court. "Appellate courts do not weigh conflicting debatable evidence, pass on the credibility of witnesses, or redetermine questions of fact." *Haworth*, 2003 WL 21981949, at *5 (citing *St. Francis Mercantile Equity Exchange, Inc. v. Newton*, 27 Kan. App. 2d 18, 24, 996 P.2d 365 [2002]); see also *Landram*, 2012 WL 924803, at *5 ("On appeal under [the substantial competent evidence] standard, we neither make credibility findings nor credit evidence conflicting with the trial court's fact determinations."). This court reviews the findings made by the trial court for substantial competent evidence. Therefore, KDR's assertion that because substantial competent evidence supports its argument that Hanchett refused a breath test, so her license suspension should be affirmed, is flawed.

In conclusion, because the trial court made no factual findings or conclusions of law regarding whether Hanchett refused to submit to a breath test, and because the record is not sufficient to permit this court to undertake a meaningful appellate review of the issue, we remand the case to the trial court for factual findings. See *O'Brien*, 294 Kan. at 361.

Reversed and remanded with directions.