NOT DESIGNATED FOR PUBLICATION

No. 120,186

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SHERRIE MADISON,
*Appellee*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Rooks District Court; BLAKE A. BITTEL, judge. Opinion filed January 10, 2020.
Affirmed.

*Charles P. Bradley*, of Legal Services Bureau, Kansas Department of Revenue, for appellant.

*Andrew J. Walter*, of Walter & Walter, LLC, of Norton, for appellee.

Before ARNOLD-BURGER, C.J., LEBEN and SCHROEDER, JJ.

PER CURIAM: The Kansas Department of Revenue (KDOR) suspended Sherrie Madison's driver's license after she failed a breath test. On judicial review, the district court affirmed the suspension, finding that while the officer lacked reasonable suspicion to initiate the traffic stop, the validity of the stop was irrelevant for the purposes of an administrative appeal. A week later, Madison moved to alter or amend the judgment based on a 2016 statutory amendment that allowed consideration of constitutional violations related to a stop. The district court reversed the suspension of Madison's driver's license, concluding that the constitutionally defective stop deprived the KDOR of

subject matter jurisdiction. The court set aside the suspension of Madison's driver's license. The KDOR appeals. Finding no error, we affirm.

FACTUAL AND PROCEDURAL HISTORY

In the early morning hours, Officer Cordell Stover witnessed a vehicle swerve to the left of the center of the road several times and move back and forth on the right side of the roadway. He began a traffic stop of the vehicle, ultimately leading to an arrest of Madison for driving under the influence (DUI). Madison agreed to submit to a breath test and that test led to a breath sample of 0.237.

After the KDOR suspended Madison's driving privileges because of the failed breath test, she requested an administrative hearing and the hearing officer upheld the suspension. Madison timely petitioned for judicial review, arguing that Officer Stover lacked probable cause to initiate the traffic stop and had no reasonable grounds to suspect she was driving under the influence.

At the evidentiary hearing before the district court, Officer Stover testified that he stopped Madison around 2:30 a.m. after witnessing her vehicle drive close to the curb, then swerve to the left of center several times and move left and right within the road. Stover admitted that driving close to the curb was not a traffic infraction, nor did it suggest impairment. He explained the road had no center line and there were multiple cars parked along the street, and agreed it was proper for a vehicle to move left to go around the parked vehicles. Stover said it is normal—when coming upon an intersection that dips—for the driver to go through at an angle to prevent bottoming out. He testified there were certain times when Madison's vehicle went beyond the scope of what a typical driver would need to do. So he decided to pull her over when she turned a corner and went left of center into the other lane.

2

The district court viewed the video recording from Stover's patrol car, which showed that Madison's vehicle moved around vehicles in the street to avoid hitting them but did not commit any traffic infractions.

The district court ultimately issued a memorandum decision affirming Madison's driver's license suspension. The court found, in part, based on the evidence presented that Madison did not commit any traffic infractions leading up to the traffic stop. But the court went on to find that the validity of the traffic stop was irrelevant for the purposes of an administrative appeal based on *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 646, 176 P.3d 938 (2008). In addition, the exclusive statutory list of issues that could be raised in a driver's license suspension action did not include the lawfulness of the stop. See K.S.A. 2017 Supp. 8-1020(h)(2).

One week after the district court issued its decision, Madison moved to alter the judgment under K.S.A. 2017 Supp. 60-259(a)(1)(B). She argued that legislative amendments to K.S.A. 2017 Supp. 8-1020—which became effective between the administrative review hearing and the court's review hearing in October 2016—allowed the district court to consider any constitutional issue, including the lawfulness of a traffic stop. The district court granted the motion. After hearing arguments, the court agreed with Madison and considered the lawfulness of the traffic stop under K.S.A. 2017 Supp. 8-1020(p). The court found, consistent with its prior order, that Officer Stover lacked reasonable suspicion to initiate the stop, so the stop was constitutionally defective. Based on the amended statute, the court reversed course and found that the KDOR lacked subject matter jurisdiction to suspend Madison's driver's license.

The KDOR timely appeals.

ANALYSIS

The KDOR makes three claims of error on appeal. First, it claims that the district court lacked jurisdiction to reconsider its first order upholding the suspension. Second, it contends that the officer had reasonable suspicion that Madison was under the influence of alcohol to support his request for a breath test. And finally, the KDOR contends that even if the officer did not have reasonable suspicion, it does not matter because the officer does not have to have reasonable suspicion to request a breath test to have subject matter jurisdiction over the case. We will examine each in order.

*The district court had jurisdiction to reconsider its prior order.*

To begin, the KDOR believes that the district court lacked jurisdiction to reconsider its prior order upholding the suspension. Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *In re Care & Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017).

The agency concedes that K.S.A. 2018 Supp. 60-259(a)(1)(B) permits reconsideration, but without citing any authority to support its position, claims that if the prior order was not in error, the district court has no jurisdiction to reconsider it. The entire argument consists of four sentences of circular reasoning with no support. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018) (finding that issues not adequately briefed are considered waived or abandoned).

Madison timely moved the district court to revisit its ruling because it relied on cases that were effectively overruled by the amendment of K.S.A. 2017 Supp. 8-1020(p). The district court agreed that its prior order was erroneous, revisited it, and issued a new order. We know of no cases that hold the court lacks jurisdiction to hear a motion under

4

K.S.A. 2018 Supp. 60-259(a)(1)(B) if it did not err in its original holding. The court has jurisdiction to consider a motion claiming it erred. This point of error fails.

*There was sufficient evidence for the district court to find that the officer lacked a reasonable suspicion to stop Madison.*

*Our standard of review and the applicable procedure*

When a driver challenges the administrative suspension of his or her driving privileges for failing to submit to a breath test, the district court holds a de novo trial. K.S.A. 2017 Supp. 8-1020(p). At trial, the driver bears the burden of proving the agency action should be set aside. K.S.A. 2017 Supp. 8-1020(q).

An appellate court reviews a district court's decision in a driver's license suspension case to determine whether it is supported by substantial competent evidence. *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012). Substantial competent evidence is evidence that has both relevance and substance, and provides a substantial basis of fact from which the issues can be reasonably resolved. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 73, 350 P.3d 1071 (2015). In reviewing a district court's factual findings, appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

Before the KDOR may suspend a person's driver's license for a breath test failure, a law enforcement officer must certify that the officer had reasonable grounds when the officer requested the breath test to believe that the person had operated a vehicle while under the influence of alcohol. K.S.A. 2018 Supp. 8-1002(a)(2). Reasonable grounds resemble probable cause, and "[p]robable cause exists where the officer's knowledge of the surrounding facts and circumstances creates a reasonable belief that the defendant committed a specific crime. Probable cause does not require an officer have evidence of

5

every element of the crime." *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 515, 242 P.3d 1179 (2010). A court determines the existence of probable cause by evaluating the totality of the circumstances. *State v. Hill*, 281 Kan. 136, 146, 130 P.3d 1 (2006).

In Kansas the law governing testing for alcohol or drugs for a person who operates or attempts to operate a vehicle is entirely statutory. K.S.A. 8-1001 et seq. Under the statutory framework, the KDOR may administratively suspend a driver's license after review of the law enforcement officer's certification, in part, that "[t]here existed reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol." K.S.A. 2018 Supp. 8-1002(a)(2). If the KDOR determines the certification fails to meet the requirements of subsection (a), the KDOR "shall dismiss the administrative proceeding and return any license surrendered by the person." K.S.A. 2018 Supp. 8-1002(f).

Before the 2016 statutory amendment, the scope of review by the district court was limited to the same exclusive factors that could be considered at the administrative hearing. This did not include any consideration of whether the officer had reasonable suspicion to believe the person was operating a vehicle under the influence of alcohol. See *Martin*, 285 Kan. at 631 (list of factors is exclusive and does not include whether reasonable suspicion existed to justify a traffic stop). But in 2016, the Kansas Legislature made several changes to the statute, including one expanding the scope of judicial review. L. 2016, ch. 69, § 2. That amendment added the following language:

> "Notwithstanding K.S.A. 77-617, and amendments thereto, the court: (1) May also consider and determine any constitutional issue, including, but not limited to, the lawfulness of the law enforcement encounter, even if such issue was not raised before the agency; and (2) shall also consider and determine any constitutional issue, including, but not limited to, the lawfulness of the law enforcement encounter, if such issue is raised by the petitioner in the petition for review, even if such issue was not raised before the agency." K.S.A. 2017 Supp. 8-1020(p).

6

With this framework in mind, we move to the facts of this case.

*Application to the facts of this case*

The KDOR contends the district court erred by finding that Stover lacked reasonable suspicion to stop Madison's car. Consideration of this issue implicates Madison's constitutional right to be free of unreasonable searches and seizures by government officials.

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Section 15 of the Kansas Constitution Bill of Rights provides "the same protection from unlawful government searches and seizures as the Fourth Amendment." *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014).

Because a traffic stop is a seizure of a driver, to conduct a traffic stop in compliance with the Fourth Amendment, the officer conducting the stop must have a reasonable and articulable suspicion that the driver has committed, is committing, or is about to commit a crime. See K.S.A. 22-2402(1); *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Reasonable suspicion is a minimum level of objective justification and is a lower standard than probable cause. *City of Atwood v. Pianalto*, 301 Kan. 1008, 1011, 350 P.3d 1048 (2015). A traffic infraction provides an objectively valid reason to effectuate a traffic stop. *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014).

The KDOR cites two cases to support its claim that the evidence at trial established reasonable suspicion to initiate a traffic stop. First, in *State v. Field*, 252 Kan. 657, 664, 847 P.2d 1280 (1993), the Kansas Supreme Court held that despite not observing a traffic violation, an officer had reasonable suspicion to stop a driver who was

7

weaving within his own lane at 2 a.m. Then, the KDOR cites *Campbell v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 430, 962 P.2d 1150 (1998), to support that driving in the "early morning hour can be considered indicia of possible impairment." According to the KDOR, these cases support that Officer Stover had a reasonable and articulable suspicion to initiate a traffic stop because the evidence showed Madison's vehicle weaved between the curb and the opposing lane of traffic on a wide road at around 2:30 a.m.

We agree the conduct described by the officer would have provided reasonable suspicion for the car stop had the district court found the testimony credible. But the district court reviewed the video tape and found that Officer Stover's testimony was not supported by the videotape. Stover was the only witness to attempt to establish reasonable suspicion for the car stop. The district court found that Madison did not commit any traffic violations, and when she drove left of center it was clear that she was legally avoiding vehicles in the lane. We will not reweigh the evidence or make witness credibility determinations. *Chandler*, 307 Kan. at 668. Accordingly, we conclude this finding is supported by the record.

*The lack of reasonable suspicion for a traffic stop requires that the driver's license suspension action be dismissed and the State return Madison's driver's license to her.*

The KDOR next asserts that even if the traffic stop was unlawful, the district court erred by finding a lack of reasonable suspicion deprived the agency of subject matter jurisdiction. The KDOR begins by correctly pointing out that the Kansas Supreme Court once held in *Martin* that the exclusionary rule does not apply in administrative driver's license suspension cases. See 285 Kan. at 646. The KDOR then addresses the 2016 amendment to K.S.A. 8-1020(p), arguing that a panel of this court held that the amendment does not invalidate that holding from *Martin*. See *Whigham v. Kansas Dept. of Revenue*, No. 117,043, 2018 WL 1884742, at *3 (Kan. App.) (unpublished opinion) (until the Kansas Supreme Court rules otherwise, drivers may raise Fourth Amendment

claims but such arguments "have no practical effect . . . in the administrative context"), *rev. granted* 308 Kan. 1602 (2018). The KDOR then asserts that the "only logical method" by which the district court could conclude that the KDOR lacked subject matter jurisdiction was based on the Kansas Supreme Court's holding in *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012).

In *Sloop*, decided several years after *Martin*, the Kansas Supreme Court held that lack of probable cause to arrest a driver for DUI leads to an unlawful arrest that precludes an officer's statutory authority to request a breath test. The KDOR frames Madison's argument as an analogy to *Sloop*: "As a lack of probable cause in *Sloop* precludes subject matter jurisdiction in administrative driver's license cases, subject matter jurisdiction would likewise be precluded if the officer lacked articulable suspicion to initiate the traffic stop."

Although we agree that the district court stated its finding in terms of subject matter jurisdiction, the Kansas Supreme Court decision in *Sloop* was not based on a lack of subject matter jurisdiction. In fact, subject matter jurisdiction is never discussed. The decision was based on a lack of statutory authority for the officer to request a breath test. "An arrest must be lawful before an arresting officer is authorized to request a test under K.S.A. 2008 Supp. 8-1001(b)(1)(A) to determine the presence of alcohol or drugs." *Sloop*, 296 Kan. 13, Syl. ¶ 3.

> "Because the evidence in this case was insufficient to establish probable cause for the defendant's arrest, his arrest was unlawful. The arresting officer therefore had no authority under K.S.A. 2008 Supp. 8-1001(b) to request the defendant to take an evidentiary breath test. The defendant's refusal to take an unauthorized test cannot be the basis for suspending his driving privileges under K.S.A. 2008 Supp. 8-1014(a)(1). They are therefore reinstated." 296 Kan. 13, Syl. ¶ 6.

The *Sloop* court does not mention *Martin*, because—like this case—it had nothing to do with the exclusionary rule, and everything to do with compliance with the statute. Here, the issue is compliance with K.S.A. 2017 Supp. 8-1020(p). Statutory interpretation is a question of law over which appellate courts have unlimited review. See *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362, 361 P.3d 504 (2015).

In interpreting the meaning of K.S.A. 2017 Supp. 8-1020(p) we find the decision made by another panel of this court persuasive. See *Jarvis v. Kansas Dept. of Revenue*, 56 Kan. App. 2d 1081, 442 P.3d 1054 (2019), *rev. granted* December 17, 2019.

Just as this court did in *Jarvis*, we believe that

"the Legislature has made it clear by the 2016 amendment to K.S.A. 8-1020(p) that the initial police encounter is a justiciable issue in a driver's license suspension case—at least when the case is on judicial review following the administrative hearing. The statute did not provide for the district court to consider and decide the 'lawfulness of the law enforcement encounter' when *Martin* was decided.

"K.S.A. 2018 Supp. 8-1020(p) also states that '[i]f the court finds that the grounds for action by the agency have been met, the court shall affirm.' So under the statute, the 'lawfulness of the law enforcement encounter' is a constitutional issue the district court can now decide in a driver's license suspension case, and the court shall affirm the suspension if it finds that the grounds for action by the agency action have been met. *If the court shall affirm the agency action if it finds that the grounds for the agency action have been met, then the only logical inference is that the court shall reverse the agency action if it finds that the grounds for the agency action have not been met.*" (Emphasis added.) 56 Kan. App. 2d at 1096.

Although we are not bound by the *Jarvis* decision, the facts here are very similar to those in *Jarvis*, and the approach taken by the district court in *Jarvis* and here is nearly indistinguishable.

The district court initially determined that the statute did not allow consideration of whether reasonable suspicion existed to justify the traffic stop under the limitations set out in K.S.A. 2017 Supp. 8-1020(h)(2). After Madison moved to alter the judgment, bringing the 2016 amendment to the court's attention, the court determined that it could now "consider the lawfulness of the law enforcement encounter *pursuant to K.S.A. 8-1020(p) as part of its review of the agency decision*." (Emphasis added.) The court then concluded reversal of the suspension was warranted, based on its previous findings that Officer Stover did not have reasonable suspicion to stop Madison, so the stop was "constitutionally defective" and the KDOR never acquired subject matter jurisdiction over Madison's driver's license.

In reaching its decision, the district court noted the parties' arguments:

> "6. Defendant argues that previous opinions hold that the exclusionary rule does not apply and that while the District Court may consider constitutional issues there is no remedy.

> "7. In response the Plaintiff argues it would make no sense that the amendment allows the District Court to consider constitutional issues, which specifically include the lawfulness of the law enforcement encounter, but there be no remedy, as that would essentially make that portion of the statute meaningless."

The district court's ultimate conclusion was that a specific remedy existed for a constitutionally defective traffic stop: reversal of the administrative suspension. That conclusion is supported by the *Jarvis* decision. After further review we believe it is the correct interpretation of the 2016 amendment to K.S.A. 8-1020(p). As stated in *Jarvis*, "the Legislature has made it clear by the 2016 amendment to K.S.A. 8-1020(p) that the initial police encounter is a justiciable issue in a driver's license suspension case." 56 Kan. App. 2d at 1096. So when a district court reviews an administrative driver's license suspension under K.S.A. 2017 Supp. 8-1020(p) and determines that the officer lacked

11

reasonable suspicion to initiate the traffic stop, the appropriate remedy is to set aside the suspension.

Along with the *Jarvis* decision, the Kansas Supreme Court's holding in *Sloop* supports a finding that a constitutional defect in a law enforcement encounter leading to an administrative suspension of a driver's license should result in setting aside the suspension. The *Sloop* court recognized that a plain reading of the statutory language, specifically that "'[t]*he person has been arrested or otherwise taken into custody* for any offense involving operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both,'" meant that the arrest needed to be lawful. See 296 Kan. at 19. When deciding whether an arrest was lawful, the Kansas Supreme Court looked to probable cause as the appropriate legal standard. 296 Kan. at 20-21. And because the officer in the case did not have probable cause to support an arrest for DUI, the suspension of Sloop's driver's license for refusing to take an unauthorized breath test was invalid and had to be set aside. 296 Kan. at 23-24. Likewise, when considering the "lawfulness of the law enforcement encounter" under K.S.A. 2017 Supp. 8-1020(p), a district court should determine whether the traffic stop that begins the law enforcement encounter is lawful by applying the reasonable suspicion standard. Even though the district court also found that it deprived the court of subject matter jurisdiction, the result is no different—the suspension must be set aside. See *State v. Prine*, 297 Kan. 460, 481, 303 P.3d 662 (2013) (affirming judgment as right for the wrong reasons).

For these reasons, the district court's decision to reverse Madison's driver's license suspension was appropriate under the statute. K.S.A. 2017 Supp. 8-1020(p) allows a court to consider constitutional issues, including the lawfulness of a law enforcement encounter. A lawful encounter requires reasonable suspicion to initiate a traffic stop. So lack of reasonable suspicion to initiate a traffic stop leads to an unlawful stop that deprives the officer of the authority to request a breath test.

12

In sum, the district court correctly determined that Officer Stover lacked reasonable suspicion to initiate a traffic stop and that finding was supported by substantial competent evidence. The court's ruling was based on a correct application of K.S.A. 2017 Supp. 8-1020(p), and the exclusionary rule did not factor into the court's decision. Based on these findings, the court did not err in concluding that the appropriate remedy was to set aside the administrative suspension of Madison's driving privileges.

Affirmed.